MADDEN, Respondent, vs. REEVE and others, Defendants: HARDWARE MUTUAL CASUALTY COMPANY, Appellant.

*December 8, 1938—March 7, 1939.*

For the appellant there were briefs by *Hayes & Hayes,* attorneys, and *William A. Hayes* of counsel, all of Milwaukee, and oral argument by *William A. Hayes.*

For the defendants Harvey Reeve and Donald Reeve there were briefs by *Roche & Collins* of Milwaukee, and oral argument by *Richard Roche.*

For the respondent there were briefs by *Wiener & Wiener,* attorneys, and *A. W. Richter* of counsel, all of Milwaukee, and oral argument by *Mr. Richter* and *Mr. Ben. J. Wiener.* *Corrigan & Backus* of Milwaukee were also on the brief on the motion for rehearing.

The following opinion was filed January 10, 1939:

ROSENBERRY, C. J. The only question for decision here is whether the undertaking issued by the Hardware Mutual Casualty Company covered the loss in question. The truck which injured the plaintiff was one of a fleet of five used in hauling for hire coal, sand, gravel, and other materials. The defendant on October 1, 1935, issued a fleet undertaking. The policy insured the Reeves against liability arising out of the operation of their trucks, each truck being particularly

described in a rider attached to the policy. The truck which struck Mrs. Madden was described in the rider as follows:

"1929 International 2½ T. dump truck, Factory Number 1395 Motor Number 100936 List Price 3850 Number Cylinders 4."

The policy as required by sec. 194.41, Stats. 1935, was filed with the public service commission October 15, 1935. The policy provides:

"This policy may be canceled by the named assured by written notice mailed to the company stating when thereafter such cancellation shall be effective, in which case the company upon demand shall refund the excess of premium paid by such assured above the customary short-rate premium for the expired term."

On December 12, 1935, the Reeves requested a cancellation of the coverage on the truck in question. The company honored the request, canceled the coverage, the premium was reduced, and a duplicate cancellation filed with the public service commission on December 16, 1935, as provided by sec. 194.41 (3), Stats. 1935. The public service commission canceled the coverage by entering on the face of the rider extending coverage, the words "Off Dec. 26, 1935" under the words and figures "Motor Number 100936."

On Saturday evening, February 8, 1936, the Reeves wishing to use the truck in question on the next day, Sunday, February 9th, attempted to reinstate the policy. The Reeves testified that on Saturday evening, February 8th, they endeavored to communicate with the representative of the company. They called a former agent who advised them that he was no longer with the company. They also tried to communicate with the manager of the company but were unsuccessful in reaching him. Without taking any further steps the Reeves put the truck in service on Sunday, Feb-

ruary 9th, on the forenoon of which day the accident happened.

The applicable statute, sec. 194.41, Stats. 1935, is printed in the margin.[1]

[1] 194.41  No common motor carrier of property or contract motor carrier, shall operate any motor vehicle for which a permit is required by this chapter unless it shall have in effect a good and sufficient indemnity bond, policy of insurance or other contract in writing issued by a surety, indemnity or insurance company or exchange lawfully qualified to transact such business in this state under which such indemnitor shall assume the liability prescribed by this section with respect to each motor vehicle so operated.  Violation of this section shall operate to void all certificates, licenses and permits held by the violating motor carrier, and upon proof thereof, the commission shall forthwith revoke and cancel the same.  The existence of said undertaking shall be evidenced in such manner as the commission shall require at the time of making application for permit.  The said undertaking shall provide that the indemnitor shall be directly liable for and shall pay all damages to persons or property that may be recovered against the owner or operator of each such motor vehicle by reason of the negligent use or operation thereof and shall provide that the amount of such liability shall be not less than (a) in case of injury to persons, five thousand dollars to any one person and ten thousand dollars for any one accident for vehicles having a gross weight not in excess of ten thousand pounds and ten thousand dollars to any one person and twenty thousand dollars for any one accident for vehicles having a gross weight in excess of ten thousand pounds, (b) in case of injury to property, five thousand dollars except fifty dollars for any one accident.  Such liability may be restricted so as to be inapplicable to damage claims on account of injury to property transported.  Every common motor carrier of passengers shall at all times have in force and on file with the commission a like undertaking, or evidence of the same as the commission may require, with respect to damage to property and which shall also provide that the indemnitor shall be directly liable for and shall pay all damages to passengers or other persons that may be recovered against the owner or operator of such motor vehicle by reason of the use or operation thereof, provided that such liability shall be at least in the following amounts:  . . .

(2) Where more than one motor vehicle subject to permit is operated by the same person, a single undertaking may be filed subject to the approval of the commission as to form, covering each and every motor vehicle subject to the provisions of this chapter which is or shall be operated by such person while such undertaking is in force in the amounts and subject to the conditions hereinbefore imposed.

(3) No undertaking filed under the provisions of this section shall be limited as to the total liability of the indemnitor thereunder, for

Under this section the trial court was of the view that under the terms of the statute and the policy no provision was made for a release of a single truck; that under the provisions of Condition C, which provides: "This policy may be canceled by the named assured," etc., it was necessary to cancel the entire policy, and that the policy could not be canceled on a single truck. By its terms sec. 194.41, Stats. 1935, is made a part of the policy and of course controls over any provision contained in the policy not in accordance with the statute. Sub. (3) provides:

". . . . If any such undertaking so filed shall become inoperative, the motor vehicle or motor vehicles covered thereby shall not be operated until a new undertaking in conformity with the requirements of this section shall have been filed."

This provision of the section clearly contemplates that the undertaking may be canceled off a single truck. When it is so canceled, that truck shall not be operated until the coverage has been restored. If the statute so provides it declares the public policy of the state in that regard and cannot be held to be against public policy. Questions of public policy are primarily for the legislature. There would seem to be no reason why the undertaking in question should not be treated as the public service commission did treat it as an undertaking with reference to each of the trucks particularly described in the riders. This is in accordance with what we

any series of accidents, and no such undertaking shall be terminated at any time prior to its expiration under the terms thereof, nor canceled for any reason whatever, unless there shall have been filed with the commission by the indemnitor a notice thereof at least ten days prior to the date of such termination or cancellation. If any such undertaking so filed shall become inoperative, the motor vehicle or motor vehicles covered thereby shall not be operated until a new undertaking in conformity with the requirements of this section shall have been filed.

(4) The provisions of this section shall be deemed a part of every such undertaking and no other provision thereof or agreement between the parties thereto shall operate to avoid the same.

understand to be common practice, serves every purpose for which the statute was enacted, and is a convenient and practicable way of transacting the business. Otherwise in order to have a truck released from a fleet policy it would be necessary to cancel the entire policy and issue a new policy every time the assured wished to release a particular truck from the coverage. If the policy attempted to insure all of the trucks owned by the insured at any time during the policy year the argument made on behalf of the plaintiff would have great weight. Then the matter of adding trucks or subtracting trucks from the coverage would be a matter of accounting between the insured and the insurer, but when the carrier undertakes to insure not all of the trucks but certain trucks which are specifically described and referred to, the argument fails. An undertaking such as the one in suit is in effect an undertaking covering each truck particularly described, although it provides for fifteen days' automatic coverage for additional vehicles newly acquired. A truck not described is not covered. Therefore the contention that canceling off and taking on vehicles is a mere matter of accounting is not sound.

The Reeves knew that truck No. 1395 was no longer covered, attempted to get the undertaking reinstated, failed to do so as they communicated with no representative of the insurer; nevertheless in spite of the prohibition of the statute, they put the truck into service. Putting it into service which was all they did in this case, did not reinstate the undertaking as to the truck in question.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint as against the appealing defendant.

A motion for a rehearing was denied, with $25 costs, on March 7, 1939.